UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SERGIO HARE,

      Petitioner,

v.

TERRY WILKINS, *Warden*,[1]

      Respondent.

Case No. 21-11744
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING HABEAS PETITION [1]**

---

Following a jury trial in state court, Sergio Hare was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316(A), two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and several firearm related offenses. Now, he has filed a petition for a writ of habeas corpus challenging his convictions pursuant to 28 U.S.C. § 2254. (ECF No. 15.) He argues that his trial counsel was ineffective for failing to move for a separate trial from his co-defendant and for failing to prepare a defense or request a mistrial. Having reviewed the petition, the Court finds that Hare's claims are without merit. Accordingly, the petition is DENIED.

---

[1] The Court substitutes Terry Wilkins, the current warden of Baraga Maximum Correctional Facility, as the respondent here. In a habeas case brought by an incarcerated petitioner, the proper respondent is the warden of the facility where the petitioner is incarcerated. *See* Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. § 2254, Rule 2(a) (amended 2019); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–36 (2004).

# I.

Hare and his co-defendant, Jarod Blond, were tried jointly, and their appeals were consolidated. As the facts detailed by the Michigan Court of Appeals are presumed correct on habeas review, *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)), the Court recites them here:

> [This case] arise[s] from an incident resulting in the shooting death of Tavion Wells, and the nonfatal shooting assaults of Justice Thomas and Tamyra Thompson, early in the morning of November 19, 2016. Thomas testified that she was in her car parked outside Wells's house when she saw Blond and a taller man she could not identify. Blond aimed a gun at her and insisted that she not move, then the two men entered the house with Wells, after which a shot rang out. As [Thomas] drove away, Blond fired several shots at her.
>
> Thompson, who was also with Wells on the night of the offense, identified both defendants as having appeared at Wells's house on the night in question. Thompson stated that Blond had a gun in view; she admitted having previously been inconsistent about whether Hare also had a gun, but clarified that he had his hand in his pocket in a way that suggested to her that he was also armed. According to Thompson, Blond initially pointed his gun at Wells's housemate and herself, then ultimately shot at her as she attempted to flee from the scene.
>
> Jerry Carter, who was Wells's housemate, also identified both defendants as having been involved in the incident in question, and testified that they both displayed guns at the time. According to Carter, Blond put his gun to Carter's head, and Hare pointed his gun at Wells. Carter testified that Wells "just shook his head and he want to shut the door," and "when he shut it, [Blond] had ... got to shooting," adding that Blond "shot in the door" and Wells made a sound suggesting that he had been struck, after which defendants "pushed the door open and then they both just got to shooting in the house." Carter added that he "took off," and that as he did so, defendants "got to shooting at the car and shooting at me."
>
> The forensic pathologist who performed an autopsy on Wells's body described three bullet wounds, and recovered two bullets. He opined that two of the wounds were not immediately life threatening, but that "the wound to the back was the most immediately fatal." A search of

Blond's place of residence turned up a Glock handgun and two magazines for it. A firearms expert testified that several spent cartridges recovered from Wells's premises were discharged from that Glock.

Hare did not testify. Blond, however, testified that he did not bring a gun to Wells's home, but that Wells produced a Glock and brandished it threateningly, causing Blond to struggle with Wells over that weapon, which went off in the melee. Blond added that Hare also had a gun at the time, and that Hare fired it once—not at any person but instead in apparent hopes of putting an end to the fighting that was taking place between Blond and Wells.

*People v. Blond*, No. 344434, 2019 WL 6799700, at *1 (Mich. Ct. App. Dec. 12, 2019) (per curiam), *lv. den. sub. nom.* 941 N.W.2d 656 (Mich. 2020) (mem.).

On July 28, 2021, Hare (through counsel) filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The case has undergone a lengthy procedural history. Hare's petition raised two claims of ineffective assistance of trial counsel, but one of those claims was not previously raised before the state courts. So Hare filed a motion for a stay, requesting that the Court hold his petition in abeyance while he exhausted that claim in the state courts. (ECF No. 2.) The Court granted Hare's motion, directed him to file a motion for relief from judgment with the state court by October 31, 2021, and instructed him on the procedure for returning to this Court. (ECF No. 3, PageID.46–47.)

So Hare filed a motion for relief from judgment with the trial court, which was denied. *People v. Hare*, No. 17-040842 (Mich. Cir. Ct. Nov. 22, 2021), *available at* (ECF No. 21-24). Hare's application for leave to appeal was also rejected by the

3

Michigan Court of Appeals as untimely. *People v. Hare*, No. 365401 (Mich. Ct. App. Mar. 29, 2023), *available at* (ECF No. 21-26, PageID.1868).

On August 18, 2023, Hare's habeas counsel, Kimberly Stout, filed a motion to withdraw—citing a breakdown in the relationship and disputes over payment of legal fees. (*See* ECF Nos. 6, 7.) The Court held a hearing on September 8, 2023. (*See* ECF No. 8.) Stout explained that Hare hired her to represent him in his state and federal post-conviction proceedings, which included exhausting the one additional claim in state court. During the hearing, the Court discussed with counsel the current posture of the state proceedings. Stout stated that she filed a motion for relief from judgment which was denied by the trial court. She had also filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied. At the time of the hearing, however, Stout had not yet filed an application for leave to appeal to the Michigan Supreme Court because of issues she was having obtaining payment from Hare. After the Court raised concerns about the failure to exhaust Hare's state court remedies, Stout voluntarily withdrew her motion.

The Court then informed Stout that after she exhausted Hare's claim in state court, she would need to file an amended habeas petition and a motion to reopen the case—with an explanation as to why the Court should extend the time to do so. The Court further stated that once the case was reopened, she could re-file the motion to withdraw if the breakdown in her communication with Hare continued. The following month, on October 25, 2023, Stout filed a renewed motion to withdraw stating that a delayed application for leave to appeal had been filed in the Michigan Supreme Court

on September 12, 2023, and denied as untimely, such that all state remedies had been exhausted. (ECF No. 12.). The respondent, however, was not able to locate a record of this filing. (*See* ECF No. 21-27, PageID.1916.) On December 28, 2023, the Court issued an order indicating that it would "defer ruling on Stout's renewed motion for withdrawal (ECF No. 12) until she has filed an amended habeas petition and a motion to reopen the case." (ECF No. 13, PageID.67.)

Stout complied and moved to reopen this case on January 16, 2024 (ECF No. 14) and to proceed on an amended habeas petition (ECF No. 15). The Court re-opened the case and granted Stout's motion to withdraw as counsel. (ECF No. 17.) Respondent filed an answer on July 20, 2024 (ECF No. 20) and Hare filed a *pro se* reply brief (ECF No. 22). Hare's amended petition alleges ineffective assistance of trial counsel for failing to move to sever Hare's trial from his co-defendant Blond, and for failing to move for a mistrial and present a defense.

## II.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). To obtain relief in federal court, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. And a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), with review being "limited to the record that was before the state court," *Cullen*, 563 U.S. at 181. But if a state court does not adjudicate a claim "on the merits," "AEDPA deference does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014) (internal quotations omitted).

## III.

The Court begins with the familiar standard for addressing claims of ineffective assistance of counsel. To prevail, Hare must show that counsel performed "unreasonabl[y]" and that the defective performance "prejudiced" the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 698–99 (1984). This review becomes doubly deferential when AEDPA is added to the mix. *Stermer v. Warren*, 959 F.3d 704, 746 (6th Cir. 2020) (citing See 28 U.S.C. § 2254(d)(1)). The "question is no longer whether [a] counsel's actions were reasonable," but instead whether there could exist any "fairminded" argument that trial counsel "satisfied *Strickland's* deferential standard." *Harrington,* 562 U.S. at 105–06; *see also Cullen*, 563 U.S. at 188 (explaining that the "unreasonable application prong" can be satisfied only if a petitioner shows "there was no reasonable basis" for the state court's decision).

## A.

In his first claim, Hare argues that his trial counsel was ineffective for failing to move for a separate trial from his co-defendant. (ECF No. 15, PageID.99–101.) The Michigan Court of Appeals rejected Hare's claim on the merits, finding that "jointly trying codefendants is the norm." *People v. Blond*, 2019 WL 6799700, at *4. Indeed, as the court highlighted, "[in] criminal cases with multiple defendants, public policy strongly favors joint trials." *Id*. at * 3 (citing *People v. Carroll*, 240 N.W.2d 722, 725 (Mich 1976)). The appellate court reasoned that "Hare identifie[d] no testimony in the trial-court proceedings that would have been barred from his jury's consideration had there been separate trials" and that this case did not "present the hazard where 'a single jury may convict one defendant, despite the absence of proof beyond a reasonable doubt, in order to rationalize the acquittal of another.'" *Id*. (quoting *People v. Janna*, 524 N.W.2d 682, 696 (Mich. 1994)).

There is certainly a reasonable basis for the ruling of the Michigan Court of Appeals. The law is clear that a criminal defendant is not entitled to a separate trial merely because he may have had a better chance for acquittal in a separate trial, *Zafiro v. United States*, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses. *Stanford v. Parker,* 266 F. 3d 442, 458 (6th Cir. 2001).[2] Indeed, "[m]utually antagonistic defenses are not prejudicial *per se*." *Zafiro*, 506 U.S. at 538.

---

[2] Antagonistic defenses are "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993).

A court should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539; *see also Simmons v. Balcarcel*, No. 18-2345, 2019 U.S. App. LEXIS 39382, at *6–7 (6th Cir. Apr. 2, 2019) ("A state court's failure to grant a severance warrants habeas relief only if (1) the joint trial resulted in the denial of a specific constitutional guarantee, or (2) the joint trial was fundamentally unfair") (citing *Turpin v. Kassulke*, 26 F.3d 1392, 1404 (6th Cir. 1994)). Further, a petitioner who seeks habeas relief based on a state trial court's refusal to "sever his trial from his co-defendant's trial bears a very heavy burden." *Stanford*, 266 F.3d at 459. Because joinder of defendants for trial is preferred, there is a presumption in favor of joinder which must be overcome by the party seeking severance. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 641 (E.D. Mich. 2001).

Here, Hare failed to show that severance was warranted. He did not identify a specific constitutional violation that could have been avoided through separate trials and he and Blond did not have antagonistic defenses. Blond did not claim that Hare was guilty of murder. During his testimony, Blond said that Hare fired the gun only once, not at any person, and with the intent of breaking up a fight. Blond also offered his own explanation for obtaining and shooting the gun that killed Wells, but did not accuse Hare of any aggressive actions. Nor did Blond's lack of credibility as a witness entitle Hare to a separate trial. *See, e.g.*, *United States v. Ambrose*, 740 F.2d 505, 512 (7th Cir. 1984) (finding that the fact that one co-defendant may be less credible than another is not grounds for severance of trials).

The preference under Michigan law for joint trials, combined with the fact that no reasonable argument could be made that Hare and his co-defendant had antagonistic defenses, suggests that any motion to sever by Hare's lawyer would have been futile. *See, e.g.*, *Van v. Jones*, 475 F.3d 292, 314 (6th Cir. 2007). Accordingly, Hare is unable to demonstrate that his lawyer's failure to move for a separate trial was either deficient or resulted in any prejudice. Thus, his first habeas claim fails.

## B.

As for his second claim, Hare alleges that trial counsel was ineffective for failing to prepare a defense and for failing to request a mistrial upon learning that Blond made statements to the police prior to trial. (ECF No. 15, PageID.101–104.) Respondent argues that this claim is procedurally defaulted for several reasons, including that Hare only raised it in his motion for relief from judgment and not on direct appeal. (ECF No. 20, PageID.197–198.)

"The United States Supreme Court has explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default." *Curtis v. Horton*, No. 18-13438, 2022 WL 821670, at *3 (E.D. Mich. Mar. 17, 2022) (citing *Wainwright v. Sykes*, 433 U.S. 72, 85–87 (1977).); *see also Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) ("[A] federal court may not review federal claims that were procedurally defaulted in state courts.") (citations omitted).

Procedural default occurs where "(1) the petitioner fail[ed] to comply with a state procedural rule; (2) the state courts enforce[d] the rule; (3) the state procedural

9

rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default." *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

Applying those factors to the last reasoned opinion here, the Genesee County Circuit Court found that Hare "ma[de] no attempt to address the procedural and gatekeeping requirements of [Michigan Court Rule] 6.500 *et seq.*" and thus "failed to persuade" the court that "the gatekeeping requirements of MCR 6.500 *et seq.* ha[d] been satisfied." *People v. Hare*, No. 17-040842 (Mich. Cir. Ct. Nov. 22, 2021), *available at* (ECF No. 21-24). In other words, Hare failed to show good cause for not raising this ineffective assistance claim on his direct appeal or prejudice as a result. *Id*. This finding was sufficient to invoke the procedural bar of MCR 6.508(D)(3). *See Friday v. Pitcher*, 99 F. App'x 568, 574 (6th Cir. 2004); *Guilmette*, 624 F.3d at 291 (describing MCR 6.508(D)(3) as the "procedural default rule"). In short, the state court expressly relied on a state procedural bar in dismissing Hare's claim.

As a result, to avoid this procedural default, Hare must show there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). "Cause" means that some external impediment frustrated the petitioner's ability to comply with the state's procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Such impediments include interference by state officials, "constitutionally ineffective assistance of counsel," or a showing that

the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991).

In his reply brief, Hare suggests that the reason his claim was not properly exhausted with the Michigan Supreme Court was due to the "incompetent assistance of postconviction counsel Kimberly Stout." (ECF No. 22, PageID.1978.) But Hare cannot rely on ineffective assistance of post-conviction counsel as cause because there is no constitutional right to an attorney in post-conviction proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991); *see also Landrum v. Mitchell*, 625 F.3d 905, 919 (6th Cir. 2010). "Further, [Hare] cannot excuse his procedural default by showing a fundamental miscarriage of justice because he has not submitted new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Id*. at 919.

Accordingly, Hare's second habeas claim fails.[3]

## IV.

Thus, for the reasons above, the Court DENIES Hare's petition for a writ of habeas corpus.

SO ORDERED.

---

[3] Respondents also argue that Hare's entire petition should be dismissed because Hare was untimely in moving to reopen this case. (ECF No. 20, PageID.191–194.) But this Court already ruled on that issue and found that "although Hare's motion to reopen was delayed and thus did not comply with the conditions of the stay . . . equitable tolling of the deadlines [was] appropriate considering Hare's allegations of ineffective assistance of counsel in his post-conviction proceedings." (ECF No. 17, PageID.125.) Respondent recognizes as much. (ECF No. 20, PageID.191 ("The State recognizes that this Court has already ruled on [Hare's] motion to reopen [his] case . . . .").) So the Court will not revisit this argument.

Dated: May 1, 2025

                                        s/Laurie J. Michelson
                                        LAURIE J. MICHELSON
                                        UNITED STATES DISTRICT JUDGE